# Cooley

Erin M. Estevez  
+1 202 728 7065  
eestevez@cooley.com

Via ECF and Hand Delivery

March 22, 2019

Hon. Debra C. Freeman  
United States Magistrate Judge  
U.S. District Court for the Southern District of New York  
500 Pearl Street, Room 1310  
New York, New York 10007

Re: *ASPCA v. Animal and Plant Health Inspection Service, et al.*, No. 1:18-cv-04559-GBD-DCF – ASPCA Request for Initial Disclosures and Limited Discovery

Your Honor:

This firm and the undersigned represent Plaintiff the American Society for the Prevention of Cruelty to Animals ("ASPCA") in the above-captioned action against Defendants the Animal and Plant Health Inspection Service and the United States Department of Agriculture (together, the "Agencies" or the "government"). Following the parties' teleconference with Your Honor on March 15, 2019, we submit this letter on behalf of the ASPCA to request initial disclosures and targeted discovery. We expect that the government will submit a responsive letter.

The ASPCA instituted this case pursuant to the Freedom of Information Act ("FOIA"), 5 U.S.C. § 552, after Defendants unlawfully withheld and redacted certain agency records responsive to five of the ASPCA's FOIA requests, and, in disregard of their statutory obligations, failed to respond to the ASPCA's related appeals. For at least the past decade, Defendants publicly released the same types of records at issue here without significant redactions, and Defendants have provided no explanation for their abrupt change in policy. The ASPCA has maintained throughout the case that initial disclosures and targeted discovery would be appropriate prior to summary judgment briefing, and requests that Your Honor order that relief at this time. Defendants claim – inaccurately – that Judge Daniels already foreclosed that possibility. As described in detail below, (a) Judge Daniels has not previously issued a final ruling on the ASPCA's request for initial disclosures and targeted discovery, and it is now ripe for determination, and (b) such relief is both authorized and appropriate in this FOIA action.

### Relevant Factual and Procedural Background

At the outset of this case, counsel for the ASPCA contacted government counsel to schedule a Federal Rule of Civil Procedure 26(f) conference, so that the parties could confer regarding discovery and submit a joint proposed Case Management Plan and Scheduling Order. In response, Defendants asserted that (a) this case was exempt from initial disclosures and the Rule

# Cooley

Hon. Debra C. Freeman
March 22, 2019
Page Two

26(f) conference requirements pursuant to Rule 26(a)(1)(B)(i) and (f)(1), (b) no discovery was necessary or appropriate, and (c) the parties should instead propose a schedule for cross-motions for summary judgment after the government had an opportunity to re-review its withholdings and determine whether it would release any additional records.  However, as counsel for the ASPCA explained during that conference, Defendants' failure to respond to the ASPCA's FOIA appeals left Plaintiff with scant information regarding the legal or factual bases for the Agencies' redaction and withholding of records.  As such, the ASPCA disagreed with Defendants' suggestion that this case should proceed promptly to summary judgment without further disclosure from Defendants.

Following the parties' Rule 26(f) conference, the ASPCA received, through Defendants' counsel, a response from the Agencies to one of the appeals at issue in this lawsuit.  Notably, this appeal response asserted a basis for the Agencies' redactions that the Agencies had not raised prior to the commencement of this litigation.  Specifically, the Agencies now claimed that information in *some* of the records was subject to FOIA's privacy exemptions because it pertained to licensees that operate "homestead businesses."  However, the appeal response did not explain or define "homestead business," a term that is not defined or used in licensee applications, inspection reports, or the Agencies' regulations.  Accordingly, the Agencies' assertion of a new and unexplained basis for its privacy interest argument only heighted the ASPCA's concerns regarding the need for further disclosure from Defendants.

On August 9, 2018, Judge Daniels held a pre-trial conference in this matter.  At this pretrial conference, the ASPCA sought initial disclosures and discovery from the Agencies; the Agencies opposed discovery and sought to move forward with summary judgment motions, once again building in a "period of re-review" prior to briefing.  August 9, 2018 Tr., at 2:16-17, 8:15-20.  In other words, the Agencies requested another opportunity to review and respond to Plaintiff's FOIA appeals – *the very same review process they were legally obligated to conduct within 20 business days of receiving the ASPCA's appeals*, *but chose to ignore.*  The ASPCA agreed that the Agencies should conduct a re-review of their prior withholdings, but maintained that, while this review process was ongoing, a period of discovery would be useful.  *Id*. at 4: 17-21.  The Court concluded that both the Defendants' request for a summary judgment briefing schedule and the ASPCA's request for discovery were premature given the Agencies' intent to provide supplemental production.  However, the Court directed Defendants to provide *Vaughn* index and agency declaration prior to summary judgment.  The relevant portions of the transcript are as follows:

> The Court: I am not sure where, particularly at this early stage, where either summary judgment or discovery is the appropriate step since they haven't even finished making production and you apparently don't even have any idea of what they've redacted and why they've redacted it.  (*Id*. at 6:18-22.)
>
> …
>
> The Court: Mr. Dolinger, your position that you want to go straight to summary judgment seems particularly premature also.  (*Id*. at 8: 15-17.)
>
> …

Cooley LLP   1299 Pennsylvania Avenue, NW, Suite 700   Washington, DC   20004-2400
t: (202) 842-7800  f: (202) 842-7899  cooley.com

# Cooley

Hon. Debra C. Freeman
March 22, 2019
Page Three

| | |
|---|---|
| The Court: | It doesn't come in summary judgment. They ask you for certain documents, the agency is going to − − you want to do a supplemental production, you said you were going to have the agency do the production, and then you were going to indicate to them somehow, either in writing or otherwise, why you are refusing to comply with their request. You don't intend to do that pre-summary judgment. |
| Mr. Dolinger: | We will be happy to build that into the schedule, your Honor, to disclose a Vaughn index that goes through each category of exemptions and explains the basis for it at a date before summary judgment. That's something we would be happy to do. |
| The Court: | That seems to make more sense. (*Id.* at 11:2-14.) |

…

| | |
|---|---|
| The Court: | ***So, to the extent that you can't work it out, then if you think that there is further discovery that is necessary before summary judgment, or you think no further discovery is necessary before summary judgment, then you can make those arguments***. But, at this point it seems that neither of you have gotten anywhere close to even agreeing on the parts you can agree upon and at least having a discussion about what you intend to give them. You should start that discussion now. What is it that they should make it clear to you what they are asking for and you should make it clear to them, as early as possible, whether or not you are going to refuse to give them that, no matter what. To the extent that you can't work it out, then the question is not so much for summary judgment, the question is whether or not they have made legitimate request that you should respond to or they have made a request that you should − − you have the legitimate right to refuse to respond. I don't need a bunch of briefs on that, I need to know what kind of document you are talking about. |
| Mr. Dolinger: | Yes, your Honor. We do anticipate that we will be submitting a detailed declaration from the agency explaining the basis for each of the withholdings that is challenged by the plaintiffs. |
| The Court: | And I think that should be done prior to filing any summary judgment motions and prior to any further discovery so we can at least figure out, focus on the issue and narrow the issues because at this point you are not fighting about everything. You have no idea what you are fighting about. (*Id.* 11:20-12:23 (emphasis added).) |

…

| | |
|---|---|
| The Court: | I'm not going to order either discovery or a schedule for summary judgment motion at this point. Let's see how we can narrow the issue, see where you |

# Cooley

Hon. Debra C. Freeman
March 22, 2019
Page Four

> can agree and we can agree to disagree, and then we can see whether this can be worked out or fought out. (*Id*. at 16:7-11.)
>
> …
>
> The Court:   On October 25th, we are going to talk about what the next step is and the next step is either going to be you should give me a letter before that date telling me what you think the next step should be and ***it will either be some discovery before summary judgment motions or it will be summary judgment motion schedule***, depending on what you have accomplished by supplemental review and supplemental production, your discussions about what is being produced and not being produced, and whatever reasoning and rationale they give you about why they believe they are entitled to withhold. ***And then you can articulate a basis for discovery that would resolve those issues, then I will consider that.*** Or, if it seems like it should simply go straight to summary judgment, then without further discovery then we will do that, but I think there is no reason not to − − I mean you need to be informed before I need to be informed about these issues. (*Id*. at 16:19-17:11 (emphasis added)).

During the re-review period that followed, the Agencies abandoned their Exemption 7(a) argument by releasing all records previously withheld thereunder, and withdrew their redaction of inspection dates and inspection identification numbers.  The Agencies also produced a cursory and incomplete *Vaughn* index[1] that aggregated large groups of records together and summarily asserted that FOIA's privacy exemptions applied categorically to information the Agencies had redacted. Furthermore, while the index claimed that "*some* of the redacted records" pertain to licensees operating homestead businesses, the index failed to specify *precisely the records to which* the Agencies claimed this designation applied.  The index included a one-sentence explanation of "homestead business," stating that it meant "the facility addresses associated with their licenses are co-located with the licensees' personal residences."  Separately, while the index asserted that certain records were being withheld under Exemption 7(c), FOIA's law enforcement exemption, the index offered no explanation whatsoever of the basis for this exemption's application to these records and failed even to assert expressly that the records at issue were compiled for law enforcement purposes.  Notwithstanding the prominence in this litigation of the legal and factual disputes concerning Exemption 7(c), the *Vaughn* index provided little information concerning what constitutes *fully half* of the government's case.

Finally, despite representing to the Court that the Agencies would "be submitting a detailed declaration from the agency explaining the basis for each of the withholdings that is challenged by the plaintiffs," the Agencies refused to provide any declaration at all.  The parties conferred about these outstanding issues several times in advance of the next scheduled pre-trial conference, but

---

[1]   The government filed the Vaughn index with the Court at Dkt. 35-1.

Cooley LLP   1299 Pennsylvania Avenue, NW, Suite 700   Washington, DC   20004-2400
t: (202) 842-7800  f: (202) 842-7899  cooley.com

# Cooley

Hon. Debra C. Freeman
March 22, 2019
Page Five

made little progress. The ASPCA repeatedly requested, in writing and orally to counsel for Defendants, additional information regarding the Agencies' new reliance on the "homestead business" designation, but the Agencies refused. On at least two occasions, counsel for the ASPCA expressly requested that the Agencies clarify specifically which of this group of "*some*" records the Agencies claimed pertained to "homestead businesses." To date, the Agencies have entirely failed and refused to do so.

When the parties returned to Court on November 29, 2018, they were not in the position the Court anticipated they might be after the governments' re-review process.[2] Given the factual issues raised during this re-review process, including the governments' newfound argument that the redactions in dispute relate to licensees who operate "homestead businesses," the ASPCA proposed the Agencies produce the declaration they represented they would provide, and that the parties exchange initial disclosures, followed by letters to the Court requesting discovery or summary judgment. November 29, 2018 Tr., at 2:20-25. Once again, the Agencies opposed the ASPCA's requests and sought to immediately proceed with summary judgment briefing. *Id*. at 21:2-4. The Court declined to grant either party's request and instead referred the case to Your Honor, to which the following excerpts are relevant:

> Court: I am not sure I agree with you. I don't know if this is ripe for summary judgment. (*Id*. at 21:5-6.)
>
> …
>
> Court: I don't have any of these issues, and it seems to me this isn't ripe for summary judgment until I know what part of this you're really talking about and what part of their request is unreasonable and what part of their request is reasonable and what part of your response is unreasonable and what part of your response is reasonable. (*Id*. at 28:20-25.)
>
> …
>
> Court: I think what I would like to do is refer you to the magistrate judge to sit down and talk these issues out, to see where you can agree and where you can clearly disagree. After that is done, then you'd have a pretty good idea of what the particularly focused narrow issues are, and then you can at that point, if you want to make a summary judgment motion, then agree on a schedule for summary judgment and make your motion with regard to the issues that are really genuinely in dispute. (*Id*. at 29:19-30:3.)
>
> …
>
> Court: I think there is room, consistent with the interest that the agency says they want to protect, it seems to me there is probably room for more information to be provided consistent with the interest of the plaintiff. To the extent that

---

[2] The October 25, 2018 date for the next hearing identified by the Court during the initial pre-trial conference was continued to November 29, 2018 by consent.

Cooley LLP   1299 Pennsylvania Avenue, NW, Suite 700   Washington, DC   20004-2400
t: (202) 842-7800  f: (202) 842-7899  cooley.com

Cooley

> can be done, I would like to see you work in that direction. (*Id*. at 39:21-25.)

Obviously, Judge Daniels contemplated that the purpose of the parties meeting with Your Honor would be to work toward the resolution of disputed factual issues. Judge Daniels' expectation that the parties could narrow the issues and resolve factual disputes as well as explore settlement makes sense given that his Order referred the case to your Honor for *general pretrial matters*, including scheduling, discovery, non-dispositive pretrial motions, and settlement. The Agencies' post-litigation justification that the redactions at issue relate to licensees who operate "homestead business" has raised material issues of fact that remain in dispute specifically because the Agencies have resisted at every turn the ASPCA's requests for further information or clarity.

Thus, Defendants wrongly suggest that Judge Daniels already ruled the ASPCA is not entitled to initial disclosures or discovery prior to summary judgment. Defendants argue that, because "Judge Daniels expressly denied the ASPCA's request to require the agencies to produce a declaration before summary judgment" "and did not take up the ASPCA's request to require initial disclosures," the Court therefore must have "adopted the government's suggestion that summary judgment on the legal issues is the appropriate way forward in the litigation," and that "the ASPCA now attempts to make an end-run around Judge Daniels' determination that the appropriate next phase of this matter is summary judgment briefing, not discovery." Dkt. 46 at 4. In support of these sweeping assertions, Defendants misleadingly cite to the transcript, electing not to quote the record verbatim, which in fact does not support the conclusions that the Agencies profess. Instead, the Agencies put their own gloss on the transcripts *because the government is unable to cite to anywhere in either transcript where the Court ruled that Plaintiff is not entitled to discovery or initial disclosures in advance of summary judgment*.

At the November pretrial conference, the government's request to proceed to summary judgment was denied in much the same way that the ASPCA's request for a declaration was denied. The Agencies now attempt to conflate the ASPCA's request that the Agencies produce a declaration ahead of summary judgment briefing – a request Judge Daniels denied – with the ASPCA's request for initial disclosures and discovery – a request that Judge Daniels simply deferred. And despite the Court's referral to Your Honor with the suggestion that the parties explore settlement, the Agencies refused to participate in a settlement conference. The facts and record make it clear that the only parties attempting to end-run the Court's order are the Agencies – an end run that would quickly move the case to summary judgment, as the Agencies have desired all along, without any attempt to address the factual issues the Agencies themselves created after the commencement of this litigation. In sum, Judge Daniels has not foreclosed the relief that the ASPCA now seeks, and the ASPCA's request for that relief is ripe for determination.



Hon. Debra C. Freeman
March 22, 2019
Page Seven

**Initial Disclosures and Limited Discovery Are Appropriate and Permissible in this FOIA Action**

For the reasons stated below, the ASPCA respectfully requests that Your Honor order Defendants' to provide initial disclosures and respond to limited discovery in advance of setting a schedule for summary judgment.  Rule 26 provides in relevant part:

(A) *In General.* Except as exempted by Rule 26(a)(1)(B) or as otherwise stipulated or ordered by the court, a party must, without awaiting a discovery request, provide to the other parties: (i) the name and, if known, the address and telephone number of each individual likely to have discoverable information—along with the subjects of that information—that the disclosing party may use to support its claims or defenses, unless the use would be solely for impeachment; (ii) a copy—or a description by category and location—of all documents, electronically stored information, and tangible things that the disclosing party has in its possession, custody, or control and may use to support its claims or defenses, unless the use would be solely for impeachment . . . .

The Rule provides no exemption for FOIA actions, and this case is not one that is exempt as "an action for review on an administrative record." Rule 26(a)(1)(B)(i).  In cases involving review on an administrative record, the agency would file that record with the court, the parties would be limited to the arguments they made during the administrative process, and the court would review the record under a deferential standard, only setting aside an agency's decision if the plaintiff could demonstrate that the decision was arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with law.  *See* 5 U.S.C. § 706(2)(A); *see also Lykes Bros. Steamship Co. v. Pena*, 1993 U.S. Dist. LEXIS 20279, *6 (D.D.C) (stating that arbitrary and capricious review is conducted by a review of the full administrative record that was before the agency decision-maker at the time he made his decision) (*citing Citizens to Pres. Overton Park, Inc. v. Volpe*, 401 U.S. 402 (1971)).  In such cases, there is no reason for the parties to disclose the witnesses and documents on which they plan to rely because review is *strictly confined to the existing record*.

Here, the government will not separately file an administrative record, the parties are not limited to the arguments raised during the administrative process, the burden of proof lies with the Agencies to establish their redactions are lawful, and the standard of review is not deferential, it is *de novo*.  *See* 5 U.S.C. § 552(a)(4)(B).  As the Committee Notes for the relevant subsection of Rule 26 make clear, "[t]he exclusion of an action for review on an administrative record . . . is intended to reach a proceeding that is framed as an 'appeal' based solely on an administrative record.  The exclusion should not apply to a proceeding in a form that commonly permits admission of new evidence to supplement the record."  Committee Notes, 2000 Amendments to predecessor Rule 26(a)(1)(E), *available at* 192 F.R.D. 340 at 386.  Here, the Agencies do not argue that no new evidence is admissible, and in fact, as noted above, the Agencies' *Vaughn* index now asserts that certain information is exempt from disclosure based on a designation – "homestead

Cooley

Hon. Debra C. Freeman
March 22, 2019
Page Eight

business" – that, prior to the commencement of this litigation, the Agencies had *never* raised in response to an ASPCA FOIA request.

While some courts, including the United States District Court for the District of Columbia, have chosen to exempt FOIA cases from initial disclosures via local rule, *see e.g.*, D.D.C LCvR26.2(a)(9), the local rules of the Southern District of New York include no such exemption. Furthermore, even where local rules presumptively exempt FOIA actions from initial disclosures, a court may still order disclosure. *See id*. (exempting FOIA actions "unless otherwise provided by the Court in its scheduling order"). There is no authority, and the Agencies have provided none, for the proposition that initial disclosures are *per se* prohibited in FOIA actions generally, much less in FOIA actions in this jurisdiction. Here, initial disclosures are appropriate because it is undisputed that the Agencies are relying on factual claims raised only after this litigation commenced to support their *post hoc* justification for certain redactions. It would be manifestly unfair to allow the Agencies to conceal factual information relevant to issues on which they bear the burden of proof only to surprise the ASPCA with it at summary judgment.

Additionally, discovery, while uncommon, is permitted in FOIA actions, including before this Court. *See Families For Freedom v. United States Customs & Border Prot.*, 837 F. Supp. 2d 331 (S.D.N.Y. 2011) (granting plaintiffs' request for limited discovery in FOIA action). The D.C. Circuit has held that discovery in a FOIA action is appropriate where "[f]acts respecting the [exemption claim] in question are solely in control of the [agency]' and should be granted 'for the purpose of uncovering facts which might prove [a requester's] right of access to the documents he seeks." *Schaffer v. Kissinger*, 505 F.2d 389, 391 (D.C. Cir. 1974); *see also Londrigan v. FBI*, 670 F.2d 1164 (D.C. Cir. 1981) (permitting plaintiff in a FOIA case to conduct depositions). "Thus, to the extent the discovery which Plaintiff seeks to propound is necessary to support an argument that the claimed exemptions are inapplicable, and provided the information sought is within the exclusive province of the Government, such discovery should be permitted." *MacLean v. United States DOD*, 2005 U.S. Dist. LEXIS 4042, at *3-4 (S.D. Cal. Mar. 16, 2005).

Here, these factors are present – the ASPCA is seeking information about the Agencies' newly-raised claim that certain *unspecified* records are subject to redaction because they pertain to "homestead businesses" – information that is entirely within the province of the Agencies. Indeed, *only* the Agencies even know *which* records they contend pertain to homestead businesses, a fact which they have continued to conceal for months despite specific requests for clarity from the ASPCA. Furthermore, *only* the Agencies know what criteria they have applied to determine whether a licensee is operating a "homestead business," and *only* the Agencies know what actions, if any, they have taken to verify that a particular licensee is *in fact* operating a "homestead business," as opposed to what the Agencies characterize as a "non-residential business."[3]

---

[3] The only persons who should be subject to licensure under the AWA are those operating "non-residential businesses." Persons selling animals at their residences are exempt under the Agencies' own regulations. *See* 9 C.F.R. § 1.1.

Cooley LLP   1299 Pennsylvania Avenue, NW, Suite 700   Washington, DC   20004-2400
t: (202) 842-7800  f: (202) 842-7899  cooley.com



Hon. Debra C. Freeman
March 22, 2019
Page Nine

Finally, *only* the Agencies' know what specific circumstances they consider to bring a licensee within their conception of a "homestead business." Based on the one-sentence explanation for the term supplied in their *Vaughn* index, it appears, for example, that a licensee's use of a single P.O. Box to receive both personal and business mail would be sufficient to qualify as a "homestead business" under the Agencies' vague definition. In any case, the ASPCA has no way of knowing what criteria the Agencies claim to apply for licensees to fall within this designation because the Agencies have consistently refused to say[4] – and these facts are material to the question of whether a privacy interest exists under FOIA.

Importantly, by the Agencies' own admission, they have mistakenly applied this designation on at least three (3) past occasions. In their response to one of the ASPCA's administrative appeals (received, as noted above, after the commencement of this lawsuit), the Agencies withdrew their prior withholdings related to two licensees stating: "In conducting of [*sic*] its second review, APHIS verified that two of the licensees are non-residential business entities." Likewise, in FOIA litigation currently pending in the U.S. District Court in D.C., a supplementary declaration filed by the Agencies revealed that: "Although APHIS initially withheld records relating to Little Puppies Online, APHIS has since determined that Little Puppies Online is not a homestead business as previously believed." *See Humane Society of the United States v. APHIS, et al.*, Case No. 1:18-cv-00646-TNM, Doc. 22-2 (Dec. 13, 2018), Supplemental Declaration of Tonya G. Woods at ¶ 15. Despite these admissions, it remains unclear what factual criteria might qualify a licensee as a homestead business or how the Agencies "verified" the status of these licensees and discovered their mistakes. In sum, unless additional information concerning these issues is disclosed, both the Court and the ASPCA must simply trust the Agencies when they say that "some" licensees are operating homestead businesses, as neither the Court nor the ASPCA will have the information necessary to test the Agencies' bald assertion. Until such information is provided, this case is not ready for summary judgment briefing.

Courts have also held that discovery is warranted where the plaintiff has made a "showing of bad faith on the part of the agency." *Carney v. U.S. Dep't of Justice*, 19 F.3d 807, 812 (2d Cir. 1994). Here, in two instances, the Agencies did not respond for over a year to FOIA requests the ASPCA submitted and then failed to respond in any way to the ASPCA's multiple timely appeals.

---

[4] In a November 9, 2018 email to government counsel, counsel for the ASPCA inquired: "For clarity, does the 'homestead business' designation cover situations where the regulated activity occurs in the residence, i.e., the facility and the residence are one and the same, or does the designation refer to situations where the facility and the residence only share the same address (whether physical or a PO Box), but the regulated activity occurs in a facility other than the residence, or both? What other arrangements are covered by the Agencies' designation?" During a follow-up telephone call on November 19, 2018, government counsel declined to answer any of these questions.

# Cooley

Hon. Debra C. Freeman
March 22, 2019
Page Ten

The Agencies failed to offer any explanation (reasonable or otherwise) for these failures, and, after forcing the ASPCA to file suit, frivolously claimed in their Answer that the ASPCA had not exhausted its administrative remedies. The Agencies' Answer also offered no explanation for the reversal of their decades-long practice of providing in unredacted form the very information that was now the subject of this lawsuit, and subsequently, the Agencies asserted a new justification for withholding this information – one that they had never raised with the ASPCA prior to this litigation. During the following months, the Agencies have resisted providing any additional information regarding their new justification and, as discussed above, refused even to identity with specificity which records they claim pertain to "homestead businesses."

Finally, despite Judge Daniels' referral, the Agencies have refused to engage in good faith settlement negotiations. The Agencies' only proposal has been that the ASPCA should *dismiss its lawsuit* and then make individual requests to the Agencies for records related to individual licensees – a suggestion so preposterous and disproportionate to the information at issue in this case (over a thousand records) that it does not qualify as a colorable settlement offer and could only have been made in a bad faith attempt to skirt Judge Daniel's referral and to move directly to summary judgment briefing. The Agencies' intentions were all but confirmed during the parties' teleconference with Your Honor on March 15, when government counsel informed the Court that the Agencies were unwilling to engage in a settlement conference and immediately rejected never-before offered partial compromises[5] without consulting the Agencies. At the same time, government counsel conceded that he was unable to identify a specific Agency official with authority to authorize settlement and, when asked directly to identify the head APHIS, avoided the question and failed to identify any official by name. In their rush for summary judgment, the Agencies even argued against a request for discovery that the ASPCA had yet to make in opposing the ASPCA's letter requesting a settlement conference. Taken together, these are not the actions of Defendants entitled to a presumption of good faith. *See, e.g., Pinson v. U.S. Dep't of Justice*, 55 F. Supp. 3d 80, 82 (D.D.C. 2014) (discovery appropriate where the agency may have acted in bad faith).

The ASPCA has sought some of the records at issue in this case for nearly four years. Unnecessary delay of this litigation is not in the organization's interest. However, this matter will only be delayed further if the parties proceed to summary judgment briefing while material facts remain in dispute. Despite the Agencies' historic delay in responding to the ASPCA's FOIA

---

[5] During the conference, counsel for the ASPCA suggested for the first time that it would drop objections to redaction of third-party information in exchange for release of city/state information in the records at issue – information already published on the Agencies' website and correlated with the name of every person or business licensed under the AWA. *See* https://www.aphis.usda.gov/animal_welfare/downloads/List-of-Active-Licensees-and-Registrants.pdf   Government counsel immediately dismissed this proposal as one the Agencies would not accept.

# Cooley

Hon. Debra C. Freeman
March 22, 2019
Page Eleven

requests, and utter failure to respond to its appeals, the Agencies now wish to rush to summary judgment without fully explaining *post hoc* justifications for withholdings.

For the reasons stated herein, the ASPCA requests that the Court order the following:

1. The parties exchange Initial Disclosures by April 12, 2019.

2. That Plaintiff may serve up to five interrogatories and five requests for admission concerning the Agencies "homestead business" designation upon Defendants by April 26, 2019.

3. The Agencies shall revise their *Vaughn* index to reflect which documents, by Bates number, the Agency contends pertain to licensees operating "homestead businesses."

We thank the Court for its consideration.

Respectfully submitted,

COOLEY LLP

*/s/ Erin M. Estevez*

Erin M. Estevez (*admitted pro hac vice*)
1299 Pennsylvania Ave.
Suite 700
Washington, D.C. 20004
Phone: (202) 728-7065
Fax: (202) 842-7899
eestevez@cooley.com

Kaitland M. Kennelly (KK-9574)
1114 Avenue of the Americas
New York, New York 10036
Phone: (212) 479-6643
Fax: (212) 479-6275
kkennelly@cooley.com

and

# Cooley

Hon. Debra C. Freeman
March 22, 2019
Page Twelve

                                    Jennifer H. Chin (JC-6317)
                                    Robert G. Hensley (*admitted pro hac vice*)
                                    Tamara Y. Feliciano (*admitted pro hac vice*)
                                    ASPCA
                                    520 8th Avenue, 7th Floor
                                    New York, New York 10018
                                    Phone: (212) 876-7700
                                    jennifer.chin@aspca.org
                                    robert.hensley@aspca.org
                                    tamara.feliciano@aspca.org

cc: Counsel of record (via ECF)

Cooley LLP   1299 Pennsylvania Avenue, NW, Suite 700   Washington, DC   20004-2400
t: (202) 842-7800  f: (202) 842-7899  cooley.com